IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTIAN MCKINNEY,** a/k/a Celena McKinney, | : CIVIL ACTION NO. 1:17-CV-2024 |
| | : |
| | : **(Chief Judge Conner)** |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : |
| **SUPREME MID-ATLANTIC CORPORATION and JOHN SHUYLER,** individually, | : |
| | : |
| **Defendants** | : |

# MEMORANDUM

Plaintiff Christian McKinney ("McKinney") filed this action primarily alleging employment discrimination and retaliation by defendants. Defendant Supreme Mid-Atlantic Corporation ("Supreme") moves to dismiss most of the claims McKinney has asserted against it. (Doc. 7). We will grant Supreme's motion to dismiss in its entirety.

## I. Factual Background & Procedural History

McKinney is an African-American and Caucasian transgender male who transitioned from female to male. (Doc. 1 ¶¶ 11, 17). McKinney began working for Supreme in February 2016, and his immediate supervisor was defendant John Shuyler ("Shuyler"), a white male. (Id. ¶¶ 16, 18).

McKinney alleges that in October 2016, Shuyler began a course of severe and pervasive harassment on the basis of McKinney's race, national origin, and gender. (Id. ¶¶ 19-21). On multiple occasions, Shuyler purportedly questioned McKinney about his national origin, asking McKinney whether he was "Brazilian," "Croatian,"

"Haitian," or "Guatemalan," even though McKinney had repeatedly told Shuyler that he was African-American and Caucasian. (Id. ¶¶ 21, 23, 25, 32). Shuyler allegedly declared on several occasions that McKinney was "Mexican" or "Cambodian" and could speak Spanish, and that he was in danger of "getting deported." (Id. ¶¶ 22, 31, 38, 40, 41). According to the complaint, Shuyler also made racially derogatory comments to McKinney, claiming that minorities and "people like" McKinney should "get fixed" so they do not "sit around having kids" using "food stamps and welfare." (Id. ¶ 24). McKinney avers that in a separate incident, Shuyler told another African-American employee that Shuyler would "whip him" if he did not work. (Id. ¶ 48).

McKinney alleges that Shuyler also frequently made derogatory gender-based comments. On multiple occasions, Shuyler would purportedly rub his upper lip at McKinney to point out McKinney's facial hair and would refer to McKinney as a "little boy" in front of coworkers. (Id. ¶¶ 27, 35). When McKinney asked Shuyler to stop making such comments and gestures, Shuyler allegedly responded by laughing. (Id. ¶ 27). In another incident, Shuyler supposedly stated that if he were rich he would employ McKinney "as his maid and have [McKinney] wear a little dress with a little hat and carry around a feather duster." (Id. ¶ 36). Additionally, Shuyler told McKinney that if McKinney were promoted to foreman, Shuyler would give him "a blue shirt to bring out the color of [his] eyes." (Id. ¶ 42).

McKinney further alleges that he was treated differently than other employees due to his race and gender. In one incident, a different supervisor

reprimanded McKinney—a first shift worker—for failing to maintain a particular rate of production, but the second shift workers were not reprimanded when they failed to meet their quotas. (Id. ¶ 29). Around that same time, Shuyler was requiring McKinney to "stage" or prepare materials for the incoming second-shift employees despite those workers not being required to stage materials for first-shift employees. (Id. ¶ 30). In a separate incident, Shuyler asked McKinney and a coworker to conduct a study to develop a more efficient production process. (Id. ¶ 34). When they presented their findings to Shuyler, Shuyler—without reason— reprimanded only McKinney and also issued McKinney a verbal warning. (Id.) According to McKinney, Shuyler would frequently ignore McKinney's work-related phone calls while responding immediately to those of white employees. (Id. ¶ 43).

McKinney avers that, from October 2016 to April 2017, on at least three separate occasions he asked Shuyler to stop making offensive comments, to no avail. (Id. ¶¶ 23, 25, 27). On April 3, 2017, Shuyler confronted McKinney and "put his face in close proximity to [McKinney's] face in a menacing manner," intimidating McKinney and causing him to fear for his physical safety. (Id. ¶ 44). On April 6, 2017, McKinney reported the foregoing comments and incidents to Supreme's Human Resources department. (Id. ¶¶ 45-46). Supreme terminated Shuyler one week later. (Id. ¶ 46). McKinney claims that at some point he was constructively discharged, but does not indicate when or how his employment with Supreme ended. (See id. ¶ 47).

On March 28, 2017, McKinney filed discrimination complaints with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"). (Id. ¶ 7). The EEOC dismissed McKinney's charge and issued him a "right to sue" letter in August 2017. (Id. ¶ 10; Doc. 10-2). McKinney's claim with the PHRC was still pending at the time he filed the instant complaint. (Doc. 1 ¶ 9).

In November 2017, McKinney sued Supreme and Shuyler in his individual capacity. McKinney alleges employment discrimination and retaliation in violation of Section 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA").[1] The Section 1981 claims appear to be leveled at both Supreme and Shuyler, while the Title VII and PHRA claims are directed only at Supreme. McKinney also asserts state law claims for assault and battery against Shuyler. Notably, Shuyler has not responded to the complaint despite being served on February 8, 2018. McKinney, however, has not sought entry of default or default judgment against Shuyler under Federal Rule of Civil Procedure 55. Supreme responded to McKinney's complaint by moving to dismiss many of the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.

---

[1] See 42 U.S.C. § 1981, 42 U.S.C. §§ 2000e to 2000e-17, and 43 Pa. Cons. Stat. §§ 951-63, respectively.

4

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578

5

F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

III. **Discussion**

Because Shuyler has not responded to the complaint, we confine our discussion to McKinney's claims as they pertain to Supreme. Those claims can be grouped into two categories: (1) employment discrimination in violation of federal and state law and (2) retaliation in violation of federal and state law. We will address each group *seriatim*, noting—where applicable—any salient differences in the statutory provisions McKinney invokes.

    A.    **Discrimination Under Section 1981, Title VII, and the PHRA**

McKinney alleges that Shuyler's actions constitute employment discrimination on the basis of race in violation of Section 1981, and discrimination on the basis of race, national origin, and gender in violation of Title VII and the PHRA. McKinney does not specify whether he is claiming disparate treatment discrimination, hostile work environment discrimination, or both. Supreme argues that McKinney's allegations, to the extent they invoke disparate treatment, fail to state a claim upon which relief can be granted. Supreme also contends that McKinney has failed to properly exhaust his administrative remedies.

### 1. *Failure to State a Claim for Relief*

Claims of race-based employment discrimination under Section 1981, Title VII, and the PHRA are analyzed coextensively. See Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (Section 1981 and Title VII claims) (citation omitted); Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) (Title VII and PHRA claims) (citation omitted); see also Anderson v. Boeing Co., 694 F. App'x 84, 86 n.4 (3d Cir. 2017) (nonprecedential). Claims of national origin- and gender-based discrimination under Title VII are generally treated identically under the PHRA. See Huston, 568 F.3d at 104 n.2. As noted *supra*, McKinney does not precisely state his discrimination theory of recovery.[2] The complaint could be read as asserting a disparate treatment claim, a hostile work environment claim, or both. Supreme challenges only the sufficiency of a disparate treatment theory of recovery.

### a. **Disparate Treatment**

To set forth a claim for disparate treatment employment discrimination, a plaintiff must plead facts that "raise a reasonable expectation that discovery will reveal evidence" of the following *prima facie* elements: (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought to be obtained or retained; (3) he or she suffered an "adverse employment action"; and (4) the adverse action occurred under circumstances that could indicate that

---

[2] For example, McKinney's brief in opposition to the motion to dismiss sets out the elements for a disparate treatment claim, (see Doc. 10 at 8), but also mentions "hostile work environment" and its related standard of "severe or pervasive" harassment in the same section, (see id. at 8, 9).

7

plaintiff's protected status played a "motivating or determinative" factor in the adverse action. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 789, 791 (3d Cir. 2016) (quoting Phillips, 515 F.3d at 234). The first two elements are not in dispute. However, Supreme contends that McKinney has failed to plausibly plead facts that show he suffered an adverse employment action or that the instant circumstances give rise to an inference of discrimination.

The Third Circuit Court of Appeals has described "adverse employment action" under Title VII to include any "action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones v. SEPTA, 796 F.3d 323, 326 (3d Cir. 2015) (citation omitted). Harassment that rises to the level of creating a "hostile work environment" can be an adverse employment action, but generally is treated as a separate, unique type of discrimination claim. See Greer v. Mondelez Glob., Inc., 590 F. App'x 170, 173 (3d Cir. 2014) (nonprecedential) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66-67 (1986)). McKinney proffers two purported adverse employment actions: constructive discharge and "severe and pervasive discrimination and harassment." (Doc. 10 at 9).

Whether an employee has suffered discrimination-induced constructive discharge is an objective determination. Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010). The employee must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them" would have felt compelled to resign. Mandel v. M & Q Packaging

Corp., 706 F.3d 157, 169 (3d Cir. 2013). The circumstances or conduct of which the employee complains must "surpass[] a threshold of intolerable conditions." Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 331 (3d Cir. 2016) (citation omitted). In assessing the alleged conditions, courts consider several non-exhaustive factors, including whether the employer (1) threatened to fire the employee or urged or suggested resignation or retirement, (2) demoted the employee, (3) decreased the employee's salary or benefits, (4) involuntarily transferred the employee to a "less desirable" position, (5) changed the employee's job responsibilities, or (6) issued the employee unsatisfactory performance evaluations. Colwell, 602 F.3d at 503 (quoting Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993)). Actions an employee takes or fails to take in response to complained-of circumstances are also relevant in determining whether conditions were so unbearable as to compel resignation. See DiFiore v. CSL Behring, LLC, 879 F.3d 71, 79 (3d Cir. 2018). Notably, "[a] hostile work environment will not always support a finding of constructive discharge." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006) (citation and internal quotation marks omitted). The employee claiming constructive discharge "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Id. (citation omitted).

We find that McKinney has failed to plausibly plead constructive discharge. Critically, McKinney's complaint is devoid of allegations regarding the timing and circumstances of his separation from Supreme. In fact, McKinney never specifically pleads that he resigned from Supreme due to unbearable conditions, an

essential element of a constructive discharge claim.  See Green v. Brennan, 578 U.S. __, 136 S. Ct. 1769, 1777 (2016).  But even if McKinney had proffered such an assertion, his complaint would still be deficient.  Nearly all of the Colwell factors militate against a finding of constructive discharge.  The facts as pled do not include threats of firing or suggestions of resignation; demotion; reduction in salary or benefits; involuntary transfer to a less desirable position; or unsatisfactory job evaluations.  It is true that McKinney has alleged multiple instances of discriminatory conduct by Shuyler.  Nonetheless, when McKinney reported Shuyler's conduct to Supreme, Supreme terminated Shuyler almost immediately.  McKinney does not indicate that he experienced any further harassment or discrimination after Shuyler's termination.  The instant factual allegations, therefore, do not objectively show conditions so intolerable that a reasonable person would resign.

As McKinney's complaint does not plausibly establish constructive discharge, he has failed to identify an adverse employment action outside of his assertions of severe and pervasive harassment.  McKinney provides one example of being treated less favorably because of his race, (see Doc. 1 ¶ 43), but most of his allegations involve repeated harassment by Shuyler.  Because a hostile work environment claim necessarily encompasses "disparate treatment" on the basis of protected status when the adverse action is severe or pervasive harassment, McKinney's two theories of recovery are, in reality, only one: hostile work environment discrimination.

### b. Hostile Work Environment

Title VII reaches not just economic or tangible discrimination, but prohibits harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Vinson, 477 U.S. at 67); Mandel, 706 F.3d at 167. To prevail on a hostile work environment claim, an employee must prove that (1) he or she suffered intentional discrimination on the basis of membership in a protected class, (2) the discrimination was severe or pervasive, (3) he or she was detrimentally affected by the discrimination, (4) such discrimination would detrimentally affect a reasonable person in similar circumstances, and (5) the existence of *respondeat superior* liability. Mandel, 706 F.3d at 167 (citation omitted). Supreme does not appear to challenge the sufficiency of a hostile work environment claim. Accordingly, McKinney's complaint—to the extent that it alleges hostile work environment discrimination—plausibly states a claim upon which relief can be granted.

### B. Retaliation in Violation of Section 1981, Title VII, and the PHRA

McKinney also alleges retaliation in violation of Section 1981, Title VII, and the PHRA. Like status-based discrimination, claims of retaliation under these three statutes are analyzed coextensively. Anderson, 694 F. App'x at 86 n.4. To state a *prima facie* case of retaliation, a plaintiff must show that: (1) he or she engaged in protected activity; (2) the employer took an adverse employment action against him or her; and (3) there was a causal nexus between the protected activity and the

11

adverse action. See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)). Supreme argues that McKinney cannot show an adverse employment action or causation. Because we agree that McKinney has not plausibly alleged a retaliatory employment action, we need not reach the causation element.

McKinney avers that he was constructively discharged as a result of complaining about Shuyler's harassment. However, as our preceding analysis indicates, McKinney fails to adequately plead constructive discharge. McKinney alternatively suggests that, after he complained to Shuyler and asked him to stop the offensive conduct, Shuyler "ratcheted up" the harassment.[3] (Doc. 10 at 8). McKinney relies on Hall v. New York City Department of Transportation, 701 F. Supp. 2d 318, 339 (E.D.N.Y. 2010), for support. In Hall, the court held that to establish a "retaliatory hostile work environment" claim, the plaintiff must show

---

[3] Supreme questions whether McKinney's complaints to Shuyler—the harassing supervisor—qualify as "protected activity" for a retaliation claim. The Third Circuit does not appear to have spoken directly to this issue. The Sixth Circuit, however, has held that "a complaint to the harassing supervisor" to cease the discriminatory conduct "qualifies as protected activity." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1067 (6th Cir. 2015). The Second Circuit has also indicated that complaints of discrimination to a harassing supervisor implicate protected conduct. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 115-16 (2d Cir. 2013). The Third Circuit takes a case-by-case approach to protected activity assessments, explaining that "there is no hard and fast rule as to whether conduct in a given case is protected . . . [; w]hen deciding whether a plaintiff has engaged in [protected] conduct, we look to the message being conveyed rather than the means of conveyance." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) (citations omitted). Because we conclude that McKinney's retaliation claim fails on other grounds, we need not resolve the question raised by Supreme.

"some increase in the discrimination or harassment—either a 'ratcheting up' of the preexisting behavior, or new, additional forms of harassment[.]" Hall, 701 F. Supp. 2d at 339 (quoting Hall v. Parker Hannifan Corp., 824 F. Supp. 2d 464, 469-70 (W.D.N.Y. 2009)).[4]

The problem for McKinney is that the complaint does not bear out any type of "ratcheting up" or "new, additional forms" of harassment. McKinney avers that on three occasions he asked Shuyler to stop making offensive and inappropriate comments: once in November 2016 and twice in January 2017. Shuyler's harassment of McKinney appears to have continued unaltered, becoming no worse or better following these complaints. (See Doc. 1 ¶¶ 30-44). McKinney does allege one instance of physical intimidation by Shuyler in April 2017, but we do not find this single incident sufficient to establish a post-complaint increase in harassment, especially because this incident occurred nearly three months after McKinney's last complaint. Because the pleadings do not establish constructive discharge or "some increase in the discrimination or harassment," McKinney has not adequately pled a retaliatory adverse employment action. Accordingly, McKinney's retaliation claims cannot survive Rule 12(b)(6) scrutiny.

---

[4] McKinney and the Hall court treat this issue as one of causation. We find it more logically related to the question of whether there was an adverse employment action. See Parker Hannifan Corp., 824 F. Supp. 2d at 469-70; Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001) (finding that worsening of harassment after protected activity could qualify as retaliatory adverse employment action). Causation, *per contra*, would more properly be associated with determining whether the increase in harassment was due to the employee's protected conduct.

### C. Exhaustion of Administrative Remedies

Supreme also contends that McKinney failed to exhaust administrative remedies prior to bringing his Title VII and PHRA claims. A plaintiff seeking redress for alleged discrimination must exhaust all administrative remedies before seeking relief in federal court. Watson v. Eastman Kodak Co., 235 F.3d 852, 854 (3d Cir. 2000). A complainant must file a charge of discrimination with the EEOC within 180 days after an allegedly unlawful employment practice occurs. 42 U.S.C. § 2000e-5(e)(1). This deadline extends to 300 days if a complainant files similar charges in a state with a parallel agency such as the PHRC. Id.; Mandel, 706 F.3d at 165. If the EEOC does not resolve the matter within 180 days after investigating the charges, the EEOC notifies the complainant with a right-to-sue letter. Burgh v. Borough Council, 251 F.3d 465, 469-70 (3d Cir. 2001) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). Receipt of a right-to-sue letter is a prerequisite to filing a private action. Id. (citations omitted). For PHRA claims, the PHRC has "exclusive jurisdiction" for one year to investigate or conciliate the matter, and only if the one-year period expires or the PHRC dismisses the charges may the complainant file suit. Burgh, 251 F.3d at 471; 43 PA. STAT. AND CONS. STAT. § 962(c)(1).

As the record presently stands, McKinney's PHRA claims are premature. McKinney admits as much in his complaint, identifying the PHRA claims as "not yet ripe for suit." (Doc. 1 ¶ 9). He requests that the court "hold the [PHRA claims] in abeyance" rather than dismissing the claims, but provides no authority for this

14

proposition. To date, McKinney has not moved to amend his complaint, nor has he provided any supplemental information to the court regarding exhaustion with the PHRC. We are thus constrained to dismiss the PHRA discrimination claims[5] without prejudice to McKinney's right to reassert them if and when he is able to properly plead exhaustion. See Clay v. Advanced Comput. Applications, Inc., 559 A.2d 917, 919-20 (Pa. 1989).

McKinney also failed to exhaust his Title VII-related administrative remedies. McKinney contends that he filed a complaint with the EEOC and received a right-to-sue letter, thus satisfying the Title VII exhaustion requirements. Supreme counters that McKinney's Title VII claims nonetheless must be dismissed because he failed to verify his EEOC charge under oath or affirmation pursuant to 42 U.S.C. § 2000e-5(b) prior to issuance of the right-to-sue letter. Under the present circumstances, this failure to verify is fatal to McKinney's Title VII claims.

Title VII's verification requirement is mandatory, Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 262 (3d Cir. 2006), and a "condition precedent" to filing suit, Gad v. Kan. State Univ., 787 F.3d 1032, 1042 (10th Cir. 2015). Nevertheless, failing to verify a charge with the EEOC is not an absolute jurisdictional bar to a civil lawsuit and is "subject to waiver when equity so requires." Buck, 452 F.3d at 262-63, 265. In Buck, the Third Circuit held that verification would be excused in "unusual cases" when "an employer has actual notice of a discrimination charge and chooses

---

[5] Because the PHRA claims are unripe, we decline to address McKinney's "aiding and abetting" claim under 43 PA. STAT. AND CONS. STAT. § 955(e). (See Doc. 1 at 14 (mislabeling seventh count as "fifth" and failing to follow prior paragraph numbering)).

to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense[.]" Id. at 265. That is not the case here. Supreme was notified of the charge of discrimination, but was not provided the substance of the claims and was explicitly informed that it was not required to respond before the charge was perfected. (See Doc. 9-1 at 2). McKinney's EEOC complaint was subsequently dismissed because he "failed to return a signed charge of employment discrimination as had been requested or otherwise failed to provide requested information needed to complete intake processing." (Doc. 10-2 at 2). McKinney thus failed to verify his charge as required by Section 2000e-5(b) and Supreme raised its verification challenge at the first possible juncture. Under these circumstances, we find that Supreme has not waived "its right to secure dismissal of the federal court proceedings" on the basis of lack of verification. Buck, 452 F.3d at 265.

We also note that dismissal of the Title VII claims for failure to exhaust is with prejudice. Had the EEOC not dismissed McKinney's charge and issued the standard right-to-sue letter, amendment to provide verification would likely be possible. See 29 C.F.R. § 1601.12(b). The Buck court, however, found "instructive" those cases that have held that "amendment serves no purpose once the right to sue letter has issued." Buck, 452 F.3d at 263 (citing Balazs v. Liebenthal, 32 F.3d 151, 157 (4th Cir. 1994); Danley v. Book-of-the-Month Club, Inc., 921 F. Supp. 1352, 1354 (M.D. Pa. 1996)). Because the EEOC dismissed McKinney's charge for failure to verify, closed its file, and issued the obligatory right-to-sue letter, McKinney cannot

now amend his charge to provide verification.  See id.; see also Barrick v. Weis Mkts., Inc., No. 4:18-CV-362, 2018 WL 3840819, at *5 (M.D. Pa. Aug. 13, 2018), appeal filed, No. 18-2826 (3d Cir. Aug. 20, 2018); Clowney v. URS/AECOM, URS Fed. Servs., No. 3:17-CV-223, 2018 WL 487843, at *4 (M.D. Pa. Jan. 19, 2018); Musser v. Conagra Foods, Inc., No. 4:14-CV-371, 2015 WL 1729674, at *2-*5 (M.D. Pa. Apr. 15, 2015). McKinney's Title VII claims will be dismissed with prejudice.

### D. Leave to Amend

McKinney does not seek leave to amend his pleading.  Because this is a civil rights case, we must consider whether to grant leave *sua sponte*.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable.  See Fletcher-Harlee Corp., 482 F.3d at 251.  To the extent McKinney's claims are not subject to dismissal with prejudice as noted herein, we will grant McKinney an opportunity to amend his pleading as more fully articulated in the forthcoming order.

## IV. Conclusion

We will grant Supreme's motion (Doc. 7) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  We will dismiss, without prejudice, McKinney's claims for retaliation under Section 1981 as well as discrimination, retaliation, and aiding and abetting under the PHRA.  McKinney's claims of discrimination and retaliation under Title VII will be dismissed with prejudice.  The complaint's sole surviving claim against Supreme is race-based hostile work environment discrimination under 42 U.S.C. § 1981.  An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    November 27, 2018